IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | |
|---|---|
| Annette Denise Holmes, | ) CIVIL ACTION NO. 2:15-3286-RMG-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| ResCare Home Care, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

        This action was filed by the Plaintiff, pro se, alleging discrimination by the Defendant

(her employer) based on her age, race, and a disability.  The Defendant filed a motion to dismiss on

October 5, 2015 pursuant to Rule 12, Fed.R.Civ.P., asserting that Plaintiff has failed to plead or

allege exhaustion of administrative remedies, as well as that she has failed to set forth sufficient

factual allegations to state a claim.

        As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on

October 8, 2015, advising Plaintiff of the importance of a dispositive motion and of the need for her

to file an adequate response.  Plaintiff was specifically advised that if she failed to respond

adequately, the Defendant's motion may be granted, thereby ending her case.  Plaintiff thereafter

filed a response in opposition on December 22, 2015 (docketed as a motion to amend/correct

complaint), to which the Defendant filed a reply memorandum on January 8, 2016.



Defendant's motion is now before the Court for disposition.[1]

**Allegations of the Complaint**

Plaintiff alleges in her Complaint that she was injured on the job on August 24, 2010 when she fell down some stairs. Plaintiff alleges that at that time she was employed by the Defendant as a Patient Care Assistant.

Plaintiff alleges that as a result of this fall in August 2010, she underwent cervical spine surgery on March 28, 2013. Plaintiff further alleges that during that time she "was subjected to intimidation and disparate terms and conditions from Annelle Orr (white)[2] the Branch Manager at the time". Plaintiff does not indicate in this paragraph of her Complaint the nature of the intimidation or disparate terms and conditions of employment to which she was being subjected. Complaint, ¶ 1. In any event, Plaintiff apparently remained out of work following her surgery, as she alleges that she was released by her surgeon (Brian Cuddy) to return to work on light duty status on July 28, 2013, at which time she accepted an offer for an office assistant position. Plaintiff alleges that Dr. Cuddy had restricted her from performing any repetitive tasks. Id., ¶ 2. Plaintiff thereafter returned to work on August 12, 2013, but alleges she was unable to perform the duties assigned to her of shredding and packing gloves due to the repetitive nature of this work and resulting pain in her neck and shoulders. Id., ¶ 3.

Plaintiff alleges that she complained to her branch manager, Lyn Small, as well as to

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e)(g), D.S.C. The Defendant has filed a motion to dismiss. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]Plaintiff is African American.

2



Dr. Cuddy, who advised her to stay out of work until her follow-up appointment with him, which was scheduled for September 5, 2013. However, Plaintiff alleges that the Defendant's attorney (Brittney Lozanne) contacted Dr. Cuddy's assistant on August 16, 2013 and said Plaintiff was "playing games", as a result of which Dr. Cuddy removed all of Plaintiff's restrictions although he did continue her on part-time status until September 2, 2013. Id., ¶ ¶ 4-6.

Plaintiff alleges that she returned to work on August 22, 2013, but that shortly thereafter the Defendant brought in a "younger, white, non-disabled" employee (Jessica Staley) from "the field". Plaintiff complains that Staley performed telephone sedentary work assignments that Plaintiff could have been assigned to meet her light duty restrictions, and that Staley was also assigned an office space, while she [Plaintiff] was assigned the more physically demanding tasks of cleaning bathrooms, vacuuming, shredding, taking out trash, and washing dishes. Additionally, Plaintiff alleges that she was only allowed to use the kitchen area or copy room, and opines that the Defendant was attempting to force her to quit. Id., ¶ ¶ 7-8.

Plaintiff alleges that on August 27, 2013 she complained to her surgeon about increased pain, following which she was referred to a pain management doctor. However, Plaintiff alleges that the Defendant's workers compensation insurance rejected Dr. Cuddy's request for a referral after Lozanne said "passing [her] off to pain management" would not help Plaintiff reach maximum medical improvement. Id., ¶ 9.

Plaintiff alleges that on September 9, 2013 she complained to Barbara Crook (white), the Defendant's Quality Assurance Manager, about being assigned to the more physically demanding jobs, but that Crook told her that was all the Defendant had for her to do and that she was not being



discriminated against.  Plaintiff alleges that she was subsequently offered assignments in the field with patients on September 10, 2013, but that she could not accept any such cases until she had been cleared by DHEC to assure that she did not have tuberculosis.  Plaintiff alleges that by the time she was cleared to work by DHEC on September 23, 2013, she had had another appointment with Dr. Cuddy, who had placed her back on restrictions and part-time status.  Id., ¶ ¶ 10-12.

Plaintiff alleges that on September 23, 2013 she was "subjected to constant criticism and extremely hostile treatment" by Orr, who by that time was the Defendant's Customer Service Supervisor.  Plaintiff alleges that when she complained to Branch Manager Lyn Small (white) about Orr and the pain she was experiencing from having to "shred all day", Small recommended that Plaintiff work "for an hour each day" or she could go home, although Small "recanted" after Plaintiff agreed to leave and Small had Plaintiff do a few faxes for her.  Plaintiff further complains that even after Staley left around the end of November 2013, she was still not allowed to utilize the empty office space, and continued to be assigned to shredding duties, which intensified her pain.  Id., ¶ ¶ 13-15.

Plaintiff alleges that on December 24, 2013, while Orr was out on vacation, Small asked her if she had tried finding other work.  Small also told Plaintiff that she was resigning and that her last day was December 30, 2013, but that Plaintiff was "alright while she was still there".  However, on December 31, 2013 (after Small had left), Plaintiff alleges that Orr attempted to reduce her hours and "frequently tried to get me out of the office, against my doctor's restrictions".  Plaintiff alleges that she complained to the Defendant's Executive Director, Kathy Dzuirus (white), on January 23, 2014, but "got no response and no corrective actions was taken".  Id., ¶ ¶ 16-18.

4



Plaintiff alleges that on January 30, 2014, the new Branch Manager, Tania Kerns (white), had her discard some boxes of brochures Orr had previously had Plaintiff pull from the filing cabinets, but that when Orr found out Plaintiff had discarded some new brochures she "became hostile towards me, ranting and raging" about how much the brochures had cost the company and telling Plaintiff to get them out of the trash. Plaintiff alleges that Kerns told Plaintiff she would assist her in getting the new brochures out of the trash, but Plaintiff alleges that Orr deliberately left new brochures unpackaged on top of the boxes of the discontinued brochures to "stir up confusion and to confront me in hopes that I would react to her hostilely so she could have fired me or I would quit". Id., ¶ ¶ 19-21.

Plaintiff alleges that after the new brochures were retrieved from the trash, she asked to meet with Kerns and the new Customer Service Supervisor, Jennifer Shelton (white). Plaintiff alleges that Kerns and Shelton told her that they had a letter from their attorney informing them that Plaintiff had been released from light duty, and they wanted her to work two cases in the field with patients, one being a blind male. Plaintiff alleges that she told them she was restricted to lifting ten pounds and about her concerns due to what had happened to her on May 31, 2012 when she was under light duty restrictions, but that she was nonetheless sent to a patient who, Plaintiff was advised, only needed her to encourage and sit with. However, Plaintiff alleges that this patient depended on Plaintiff to help her in and out of the shower, which worsened her symptoms due to the patient bearing her weight onto the Plaintiff. Id., ¶ ¶ 22-23.

Plaintiff alleges that she asked to see a copy of the letter from the attorney stating that she had been released from light duty as well as a copy of the cases she was being assigned so that



she could submit them to her attorney and physician for review before accepting these cases, since all of her treating physicians had advised her not to work with patients with her restrictions. However, Plaintiff alleges that Orr interrupted the meeting by yelling into her ear "take it or leave it" and making "inflammatory statements", following which Plaintiff alleges she was denied the opportunity to speak. Plaintiff alleges that she complained about this conduct to the Defendant's Human Resource Manager, Craig White, on January 31, 2014, but "got no response". Plaintiff alleges that she was thereafter terminated for "disruptive behavior" on February 4, 2014, but Plaintiff alleges she was actually terminated for complaining about the "extremely hostile work environment I was subjected to by Ms. Orr". Id., ¶ ¶ 24-27.

Plaintiff then goes on to set forth various purported adverse actions or conduct Orr took against her in an effort to get her out of the office against her doctor's restrictions or to fire her.

Specifically, Plaintiff alleges that on December 2, 2013 Orr refused to accept Plaintiff's time sheet, saying that Plaintiff had already sent in her time sheet for that period. Plaintiff alleges that when she reported this to Small, she initially said "whatever Annelle said", but that Small then took her time sheet after Plaintiff asked if there was someone else she could speak with. Id., ¶ ¶ 28-29. Plaintiff alleges that on December 12, 2013 she was written up for not turning in her time sheet on time, thereby causing the company additional costs to cut a manual check. However, Plaintiff alleges she did not receive a manual check because her pay was deposited into her account on December 9, 2013. Id., ¶ 30.

Plaintiff alleges that on November 12, 2013, she submitted a work release form from her physician excusing her from work until November 15, 2013, but that Orr failed to forward this form to Small, resulting in Plaintiff being written up by Small on December 12, 2013 for not

6



reporting to work on November 14, 2013.  Id., ¶¶ 31-32.  Plaintiff also alleges that in January 2011 she had to leave work because her medication was making her dizzy, and that when Orr called her a few days later asking when she was going to return, Orr became "enraged" when Plaintiff responded that she was not sure and that her symptoms were getting worse, telling Plaintiff that she should have "held on to the rail and that money is coming from her office".  Id., ¶ ¶ 33-34.

Plaintiff alleges that on March 11, 2011 she was sent back to work on light duty, following which Orr ordered her out of the office space she had previously worked from and into the kitchen.  Plaintiff alleges that later Orr and Nurse Rita (white) began to taunt her about her injury, at which time Plaintiff told them she was not going to stay around and be treated like that and had her husband come pick her up.  Plaintiff alleges that she was crying uncontrollably and reported this conduct to Dzurius, who said she would speak to Orr.  Id., ¶¶ 35-36.  However, when she was asked to come into the office the next day, instead of receiving an apology Plaintiff discovered that Orr had written her up for insubordination.  Plaintiff further alleges that Orr had the Defendant's Human Resources Representative, Christine Bolten (white), write up a statement about what had happened, but that Orr did not obtain a statement from Monica Williams-Deas (black), who was also present and working in the office at the time.  Id., ¶ 37.

Plaintiff alleges that she has been discriminated against based on her age (51), disability, race (African American), and that she has suffered unlawful retaliation.  Plaintiff alleges that even though the majority of the employees in the field are black, she was the only black working in the office, while all of the people involved in deciding her termination were white.  Id., ¶ 38. Plaintiff seeks monetary damages.  See generally, Plaintiff's Complaint.

Plaintiff has attached fifty-five pages of supporting documents to her Complaint,



which primarily consist of medical forms and records. These documents also include a Right to Sue letter from the South Carolina Human Affairs Commission (SCHAC) dated June 22, 2015, notifying Plaintiff that the Commission had been unable to conclude following an investigation that a violation of the State Human Affairs Law had occurred, and advising Plaintiff of her right to file a lawsuit. See, Plaintiff's Exhibit.

## Discussion

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Additionally, the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972); and as the Plaintiff is proceeding pro se, her pleadings are considered pursuant to this liberal standard. However, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990). See, Plaintiff's Exhibit.

## I.

## (Exhaustion of Administrative Remedies)

Defendant initially asserts that Plaintiff has failed to make any showing, or even allege, that she exhausted her administrative remedies with respect to any of her claims prior to filing



this lawsuit. See Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999) [claimant must first exhaust administrative remedies with regard to their claim before filing the claim in federal court]. The undersigned agrees.

In order to bring a lawsuit in United States District Court under Title VII (race discrimination), the ADEA (age discrimination), or the ADA (disability discrimination), a Plaintiff is first required to properly exhaust his or her administrative remedies. Specifically, these statutes require that a claimant file a charge of discrimination with the EEOC within one hundred and eighty (180) days of the alleged discriminatory act or acts, or, if the alleged discrimination occurred in a "deferral state", within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier. See 42 U.S.C. § 2000e-5(e) [Title VII]; 42 U.S.C. § 12117(a)[ADA adopts procedures set forth in § 2000e-5(e)]; 29 U.S.C. § 626(c)(2)(d)(1) [ADEA]; see also Smith v. First Union Nat'l. Bank, 202 F.3d 234, 247 (4th Cir. 2000)["Before filing suit under Title VII a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC [or SCHAC]"]; Martinez-Rivera v. Commonwealth of Puerto Rico, ___ F.3d ___, 2016 WL 373867 at * 8 (1st Cir. Jan. 29, 2016) [Plaintiff is required to exhaust her administrative remedies prior to bringing ADEA claim to federal court.].

Since South Carolina is a deferral state, the South Carolina Human Affairs Commission (SCHAC) is the appropriate state agency for purposes of Defendant's motion, and it is readily apparent that Plaintiff did file at least some type of claim with SCHAC, as she attached a copy of the Right to Sue letter she received from SCHAC on or about June 22, 2015 to her

9



Complaint as an exhibit.  See Exhibit [Court Docket No. 1-1, p. 1].[3]  However, this Right to Sue

letter does not indicate what type of claim or claims Plaintiff had filed with SCHAC, she has not

attached a copy of any administrative charge itself (which would set out what her claims were), nor

(as previously noted) has Plaintiff even alleged in her Complaint that she exhausted her

administrative remedies with respect to a race, disability, and/or age claim prior to filing this lawsuit.

Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts

sufficient to state all the elements of a claim].  Further, despite Plaintiff having clearly been placed

on notice of this deficiency by virtue of the Defendant including this argument as grounds for

dismissal in its motion to dismiss, Plaintiff failed to address this argument or deficiency in her

response to the Defendant's motion.[4]  As such, there is no way to determine from the allegations of

the Complaint whether Plaintiff has exhausted her administrative remedies with respect to her

claims, or any one of them.  Hagebush v. United States, 657 F.Supp. 675, 677 (D.Neb. 1986)["[P]ro

se pleadings may not be merely conclusory; the complaint must allege facts which, if true, state a

---

[3]The Court may consider this exhibit in ruling on Defendant's motion to dismiss.  See Williams v. 1199 Seiu United Healthcare Workers East, No. 12-72, 2012 WL 2923164 at * 1 n. 1 (D.Md. July 17, 2012)["In the employment context, a court may consider an EEOC charge and other EEOC documentation [when considering a motion to dismiss] because such documents are integral to the complaint as Plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme."] (citing Holowecki v. Fed. Express Corp., 440 F. 3d 558, 565-566 (2d Cir. 2006); McDougall v. Maryland Transit Auth., No. 11-3400, 2012 WL 1554924 at n. 3 (D.Md. Apr. 27, 2012)["a plaintiff's administrative discrimination charge is integral to a subsequent discrimination complaint."]).

[4]Plaintiff's response, which includes a copy of her original Complaint as an attachment, consists of a three sentence statement, as follows: "The Deposition and emails I submitted as evidence strongly supports my complaint therefore; I ask that the case be heard and the evidence be reviewed.  I ask that you rule against the Defendants request to dismiss the case.  My complaint is attached".



claim as a matter of law"]; see generally Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)["While the pleading standard is a liberal one, bald assertions and conclusions of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.].

Therefore, as the Defendant is correct that Plaintiff has failed to allege a fact essential to her being able to proceed with this lawsuit - that she exhausted her administrative remedies with respect to her claims, the Defendant is entitled to dismissal of this Complaint for failure of the Plaintiff to allege an essential element of her claims. Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]; see also Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)["While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level"].

## II.

### (Disparate Treatment Claims)

Defendant further argues that, in addition to the deficiency relating to exhaustion of administrative remedies discussed hereinabove, Plaintiff's Complaint is also subject to dismissal because she has failed to set forth the necessary elements of her claims.

With respect to Plaintiff's race claims, Title VII makes it unlawful "to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2. Similarly, the ADA prohibits discrimination in employment against an individual who has a qualifying disability under that Act; 42 U.S.C.



§12112(a); while the ADEA makes it unlawful to discriminate against an individual in employment on the basis of age.  See 29 U.S.C. § 621, et seq..  All of these claims are generally evaluated using the same standards; Cunningham v. Enterprise Rent-A-Car Co., No. 07-1615, 2010 WL 724507 at * 4 (W.D.Pa. Mar. 1, 2010)[The same standards govern disparate treatment claims arising under either Title VII or the ADA.]; Carr v. Mike Reichenback Ford Lincoln, Inc., No. 11-2240, 2013 WL 1282105 at * 3 (D.S.C. Mar. 26, 2013) [same]; Brennan v. Metropolitan Opera Ass'n. Inc., 192 F.3d 310, 316 (2d Cir. 1996) ["The same standards govern disparate treatment claims arising under Title VII or the ADEA"]; which require proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Defendant has addressed Plaintiff's claims under the McDonnell Douglas framework, and the undersigned concurs that there are no factual allegations in Plaintiff's Complaint which would establish or give rise to an inference of direct evidence of either race, age or disability discrimination.[5]  Under the framework established by the Supreme Court in McDonnell Douglas, Plaintiff can proceed with her claims (at least for purposes of a motion to dismiss) if she has set forth allegations sufficient to reasonably infer a prima facie case of discrimination;[6] i.e., by showing that

---

[5]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996);  Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[6]See Gladden v. Solis, No. 11-3120, 2012 WL 3009275 (3rd Cir. July 24, 2012)[To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); see also Johnson v. Scotts Co., No. 11-20, 2011 WL
(continued...)



1) she is a member of a protected class; 2) she was qualified for the job at issue; 3) she was subjected to an adverse employment action; and 4) that the position was filled ( in the case of termination) by someone who is not a member of her protected class, or there is some other evidence sufficient to give rise to an inference of unlawful discrimination.  See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001);  Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995).  See Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996); see also Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995)[The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged].

Plaintiff alleges in her Complaint that she is a member of a protected class (African American, over forty years of age, and suffering from a debilitating back condition), and that she was qualified for the job she held.  The Complaint also clearly alleges that Plaintiff was subjected to an adverse employment action (she was terminated).  Therefore, the question is whether Plaintiff has sufficiently alleged the fourth prong of her prima facie case (with some modification of the standard with respect to her disability claim).  Each of Plaintiff's disparate treatment claims is addressed below in turn.

**ADEA Claim**.  With respect to Plaintiff's age claim, there are no allegations in the Complaint to show that her age (51) had anything to do with the disparate treatment Plaintiff alleges

---

[6](...continued)
6415521 at * 2 (S.D.Ohio Dec. 21, 2011)["To survive Defendant's motion to dismiss, [plaintiff] need only establish a prima facie case of discrimination."] (citing Cox v. Shelby State Comty. College, 48 Fed. Appx. 500, 506 (6th Cir. 2002).

13



she received or with regard to her termination.  Rather, Plaintiff simply alleges in the last paragraph of her Complaint that she is fifty-one years old.  None of the allegations elsewhere in the Complaint set forth any facts to show or infer that the actions taken against Plaintiff by Orr or anyone else had anything to do with her age.[7]  Cf. Nichols v. Caroline County Bd. of Educ., 123 Fed.Supp.2d 320, 327 (D.Md. 2000)[Plaintiff's contention that supervisors subjected him to adverse employment actions "because I am who I am" insufficient to establish [discriminatory] character to their disagreements and misunderstandings].

Therefore, Plaintiff has failed to set forth the necessary factual allegations to proceed with an age discrimination claim under the ADEA.  Carpenter v. County School Board, 107 Fed.App'x. 351, 351-352 (4th Cir. 2004) [Claim subject to dismissal where Plaintiff does "nothing more than state that he was in a protected class and that he suffered adverse employment decision"]; Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].

**Title VII claim**.  With respect to her race claim, Plaintiff alleges that she is African American and that Orr (who is white) treated her harshly and unfairly by assigning her to perform work that Orr clearly knew she could not do.  Plaintiff also alleges that Orr only allowed Plaintiff to use the kitchen area or a copy room, while she allowed at least one other employee who is white

---

[7]While Plaintiff does allege that another employee, Jessica Staley, was "younger, white, [and] non-disabled" and for a time performed some sedentary telephone work that Plaintiff complains she could have performed, there is no indication in Plaintiff's allegations that Staley replaced the Plaintiff in any position or to otherwise show that Staley working for the Defendant had anything to do with her age versus the Plaintiff's age, or Plaintiff's job, job assignments, or job responsibilities.  Harper, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"].

14



(Staley) to use an office space even though she had only recently come in from "the field". Plaintiff alleges that Orr purposely mixed in some new brochures with some old brochures that were being thrown out in order to provoke a reaction from Plaintiff that would have either gotten Plaintiff fired or would result in her quitting. Plaintiff alleges that these actions were all an effort by Orr to get Plaintiff (who was the only African American working in the office, with all of the other people being white) to either quit or be fired, and that a racial motivation for Orr's conduct can be inferred from the fact that in order to support her complaints against the Plaintiff, Orr had only a white employee write up a statement about what had happened during a particular incident while purposely not obtaining a statement from an African American employee who was also present at the time.

> While Defendant contends that these facts are thin gruel for a race discrimination claim, that is not the standard for dismissal at this stage of the proceedings. Rather, the question is whether Plaintiff has alleged facts sufficient to create an inference that the wrongdoing she alleges may have occurred. Austen v. Catterton Partners V, LP, 709 F.Supp.2d 172 (D.Conn. 2010) [Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]]; see also Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009)[requirement is that Plaintiff's allegations provide sufficient notice to defendants of the plaintiff's claim].

> Accepting the factual allegations in the Complaint as true, and drawing all reasonable inferences from those allegations in Plaintiff's favor, the undersigned finds that Plaintiff's factual allegations setting forth that Orr (who is white) treated the Plaintiff (the only African American in an office otherwise comprised of whites) disparately due to a racial bias are sufficient to give rise to an inference of unlawful discrimination (the fourth prong of Plaintiff's prima facie case) to survive

15



a Rule 12 motion to dismiss.  <u>Vogt v. Greenmarine Holding, LLC</u>,  318 F.Supp.2d 136, 144 (S.D.N.Y. 2004) [Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"]; <u>Gladden</u>, 2012 WL 3009275 [To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the <u>prima facie</u> case].

        **ADA Claim**.  With respect to Plaintiff's disability claim, and giving Plaintiff's <u>pro se</u> Complaint the liberal construction to which it is entitled, Plaintiff alleges she has a disabling back condition which restricted her from performing any more than light duty work, and that the Defendant refused to accommodate this disability by repeatedly assigning her to perform work outside of her capabilities.  Plaintiff further alleges that her physician had established what her limitations were as a result of her back condition and that this information had been provided to her employer, but that even though there was available work she could perform with these limitations, the Defendant refused to assign her this work and then terminated her.  These allegations are sufficient, again at least for purposes of a Rule 12 motion to dismiss, to establish a prima facie case for failure to accommodate in violation of the ADA; i.e., that:  (1) Plaintiff had a "disability"; (2) the Defendant had notice of her disability; (3) that with a reasonable accommodation she could perform the essential functions of her position; and (4) the Defendant refused to make such accommodations.  <u>Reyazuddin v. Montgomery County, Maryland</u>, 789 F.3d 407, 414-416 (4th Cir. 2015); <u>Haneke v. Mid-Atlantic Capital Management</u>, 131 Fed.Appx. 399, 400 (4th Cir. May 10, 2005).

        While Defendant argues that Plaintiff has not established that her condition qualifies

16



as a disability under the ADA or that she could otherwise perform the essential functions of her position with her condition, these are *defenses* to Plaintiff's claim. However, the only question to be answered in considering whether dismissal under Rule 12 is warranted is whether Plaintiff's factual allegations state a plausible claim that the Defendant discriminated against her because of a disability. Ashcroft v. Iqbal, 129 S.Ct. at 1949; Gladden, 2012 WL 3009275 [To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]. Plaintiff's allegations satisfy this standard. See Twombly, 550 U.S. at 555 [A complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations; rather, the factual allegations must only be enough to raise a right to relief above the speculative level]; cf. Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005)["Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief'"], citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing Harrison v. United Postal Service, 840 F.2d 1149, 1152 (4th Cir. 1988).

### III.

### (Retaliation Claim)

With respect to Plaintiff's claim of retaliation, in order to survive the Defendant's



motion to dismiss her retaliation claim, Plaintiff's allegations must be sufficient to reasonably infer a prima facie case of retaliation; i.e., by showing that 1) she engaged in activity protected; 2) the Defendant took an adverse employment action against her; and 3) a causal connection exists between the protected activity and the adverse action. Lettieri v. Equest, Inc., 478 F.3d 640, 650 (4th Cir. 2007); Williams v. Cerberronics, Inc., 871 F.2d 452, 457 (4th Cir. 1989); Munday v. Waste Management of North America, Inc., 127 F.3d 239, 242 (4th Cir. 1997); see Ennis, 53 F.3d at 58 (1995)[The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged].

Here, while Plaintiff does allege that she complained to management about the work Orr was requiring her to do, the undersigned is constrained to agree with the Defendant that Plaintiff has failed to set forth any factual allegations showing that any complaints she made about her job duties or Orr's conduct towards her were based on a protected activity; to wit: that any of her complaints were that Orr or any other management official was taking actions against her because she had complained that she was being discriminated against on the basis of her race, age or disability. Cf. Rodas v. Town of Farmington, 918 F.Supp.2d 183, 189 (W.D.N.Y. Jan. 16, 2013)["'Protected activity' includes opposing employment practices that are prohibited under Title VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII."].

Plaintiff only alleges that she complained about her treatment, and a generalized claim by an employee that they have been subjected to "unfair treatment" is not protected activity for purposes of a civil rights claim. Sung Kun Kim v. Panetta, No. 11-1370, 2012 WL 3600288 at * 17



(E.D.Va. Aug. 21, 2012) ["Protected activity does not include generalized employment-related complaints unrelated to . . . prohibited discrimination"].  Rather, the conduct about which the employee complains must be activity protected by, in this case,  Title VII, the ADA, or the ADEA. Sara Kaye Ruffner v. MD OMG EMP LLC, No. 11-1880, 2012 WL 3542019 at * 3 (M.D. Aug. 13, 2012)["Protected activity does not include opposition to all 'unlawful practices' or 'practices the employee simply thinks are somehow unfair'; the employee must have 'actually opposed employment practices made unlawful by the [anti-discrimination statute"].

Plaintiff has failed to set forth any factual allegations to establish this criteria in her Complaint.  Therefore, the Defendant is entitled to dismissal of Plaintiff's retaliation claim.  See Harper, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; see also Dickson, 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]; Twombly, 550 U.S. at  555 ["While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level"]; Leeds, 85 F.3d at 53 ["While the pleading standard is a liberal one, bald assertions and conclusions of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.].

### Conclusion

Based on the foregoing, it is apparent that, while Plaintiff's Complaint contains sufficient factual allegations for some of her claims to survive, some of her other claims  do not find sufficient factual support in the allegations of her Complaint.  Further, she has in any event failed to set forth any allegations with respect to exhaustion of her administrative remedies, which is a

19



prerequisite for her being able to proceed with this lawsuit, and which is a deficiency which by itself entitles the Defendant to dismissal of this lawsuit.

However, in light of Plaintiff's <u>pro</u> <u>se</u> status, and the obligation of this Court to provide Plaintiff every opportunity to establish a meritorious claim, rather than immediately granting the Defendant's motion to dismiss, the Court could allow Plaintiff a window of opportunity to amend the allegations of her Complaint to include additional allegations to correct (or attempt to correct) these infirmaries. <u>Cf.</u> <u>Calhoun v. Vicari</u>, 05-4167, 2005 WL 2372870, at * 5 (D.N.J. Sept. 26, 2005)[Allowing Plaintiff to supplement an otherwise insufficient allegation to allow for the possible maintenance of a sufficient claim]. If Plaintiff does so, the sufficiency of her claims could then be evaluated anew.

Therefore, it is **recommended** that the Court grant the <u>pro</u> <u>se</u> Plaintiff fifteen (15) days to file an amended Complaint to address the concerns and deficiencies set forth in this opinion. If Plaintiff files an amended Complaint as directed by the Court, and the Court determines that the deficiencies set forth and discussed hereinabove are sufficiently addressed by that amendment, then it is **recommended** that the Defendant's motion to dismiss be **denied**, at which time the file could be returned to the undersigned for further proceedings.

If, however, Plaintiff fails to amend her Complaint, then the Defendant's motion should be **granted**, and this case should be **dismissed**.

If Plaintiff does file an amended Complaint, but the amended Complaint does not cure the deficiencies cited and discussed hereinabove, then in that event it is **recommended** that the Defendant's motion to dismiss be **granted**, or **granted** and **denied**, in part, as follows: First, in the

20



event Plaintiff fails to file an amended Complaint setting forth sufficient factual allegations to address the issue of exhaustion of her administrative remedies, then the Defendant's motion to dismiss should be **granted**, and this case should be **dismissed**. If, however, Plaintiff amends her Complaint to address this deficiency, but fails to cure the other deficiencies set forth and discussed hereinabove, then in that event the Defendant's motion to dismiss should be **granted** with respect to Plaintiff's claims of age discrimination under the ADEA and unlawful retaliation, but **denied** with respect to Plaintiff's claims for disparate treatment discrimination on the basis of her race under Title VII and on the basis of a disability under the ADA. Plaintiff's lawsuit could then proceed with respect to those two claims.

   The parties are referred to the Notice Page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

February 10, 2016
Charleston, South Carolina

21

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

